UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| WILLIAM HAMPTON PITTS, PATRICK SULLIVAN and RACHEL VRADENBURGH, <br><br> Plaintiffs, <br><br> v. <br><br> LSTAR DEVELOPMENT GROUP, INC. and KYLE CORKUM, <br><br> Defendants. | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** |

Plaintiffs William Hampton Pitts, Patrick Sullivan, and Rachel Vradenburgh (collectively the "Employee Plaintiffs"), by and through their attorneys, and for their Complaint against Defendants LStar Development Group, Inc. ("LSDG") and Kyle Corkum, allege as follows:

## THE PARTIES

1. Plaintiff William Hampton Pitts ("Pitts") is an individual and citizen of North Carolina whose principal residence is located in Wake County, North Carolina. Mr. Pitts was employed as the Chief Operating Officer of Defendant LStar Development Group, LLC ("LSDG") from April 6, 2015 until his termination on March 26, 2020.

2. Plaintiff Patrick "Pete" Sullivan ("Sullivan") is an individual and citizen of North Carolina whose principal residence is located in Wake County, North Carolina. Mr. Sullivan was employed as the Vice President – Development of LSDG from the time of LSDG's formation in 2011 until March 26, 2020.

1

3. Plaintiff Rachel Vradenburgh ("Vradenburgh") is an individual and citizen of North Carolina whose principal residence is located in Wake County, North Carolina. Ms. Vradenburgh was employed as the Vice President of Human Resources at LSDG from the time of its formation in 2011 until March 26, 2020.

4. Defendant LStar Development Group, Inc. ("LSDG") is a corporation organized under the laws of the State of North Carolina with its principal place of business located in Raleigh, Wake County, North Carolina. LSDG was formed in 2011 as a vehicle for its affiliated company, LStar Management, LLC ("LSM"), to conduct its day-to-day business operations. LSDG provides management services and employs personnel on behalf of LSM.

5. LSM is a real estate management and development company that was formed on or about September 3, 2008 and owns and develops a number of commercial and residential projects around the country. On March 9, 2020, the United States District Court for the Eastern District of North Carolina, the Honorable Judge Dever presiding, entered an Order appointing a Receiver for LSM.

6. Defendant Kyle Corkum ("Corkum") is an individual and a North Carolina citizen. Upon information and belief, Mr. Corkum maintains his principal residence in Wake County, North Carolina. Mr. Corkum is the majority shareholder of both LSM and LSDG and is currently the President and a member of the Board of Directors of LSDG.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over the subject matter of this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question jurisdiction).

8. This Court has supplemental jurisdiction over the Employee Plaintiffs' State law claims pursuant to 28 U.S.C. § 1367(a), in that they arise from the same core of operative facts and are so related to the Employee Plaintiffs' FLSA claims over which this Court has original jurisdiction to constitute the same case or controversy.

9. The United States District Court for the Eastern District of North Carolina has personal jurisdiction over the defendants because they are citizens and residents of Wake County, North Carolina and because the acts and omissions of which the Employee Plaintiffs complain occurred within Wake County, North Carolina.

10. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b), 28 U.S.C. § 1391(c), and Local Rule 40.1 because the defendants are citizens and residents of Wake County, North Carolina and because all defendants have and maintain their most significant contacts in Wake County, North Carolina.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

11. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA and the North Carolina Wage & Hour Act ("NCWHA") during each workweek in which they performed work for Defendants.

12. At all times relevant to this action, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

13. At all times relevant to this action, Defendants had the authority to direct, control, and/or supervise the work of Plaintiffs and were employers of Plaintiffs within the meaning of 29 U.S.C. §§ 203(d) and (g), 29 C.F.R. § 791.2, and N.C. Gen. Stat. §§ 95-25.2(3) and (5).

3

14. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of 29 U.S.C. §§ 203(e)(1) and (g), 29 C.F.R. § 791.2, and N.C. Gen. Stat. §§ 95-25.2(3) and (4).

15. At all times relevant to this action, Defendant LSDG was an enterprise engaged in commerce or the production of goods for commerce as defined by 29 U.S.C. § 203(s)(1) of the FLSA, in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sale made or business done of more than $500,000.

16. Defendant Corkum was the President of LSDG during the relevant time period and set the terms, conditions, and privileges of Plaintiffs' employment, including the amount and timing of wage payments.

17. Plaintiff Pitts was employed as the Chief Operating Officer of LSDG pursuant to a written Employment Agreement signed by Defendant Corkum on behalf of LSDG. A true and correct copy of the Pitts Employment Agreement is attached hereto as Exhibit 1.

18. The Pitts Employment Agreement originally set Pitts' annual salary at $300,000 per year.

19. In February 2016, Defendant Corkum orally informed Pitts that he was receiving a raise in salary to $400,000 per year. Pitts' paystubs issued between February 2016 and April 2018 reflected bi-weekly payments totaling $400,000 per year.

20. Upon information and belief, at all times relevant to the claims asserted herein, Pitts' annual salary was recorded in LSDG's books and records as being $400,000 per year.

21. Prior to the formation of LSDG, Plaintiff Sullivan worked for a predecessor company, LandQuest, LLC. When LandQuest ceased to exist and LSDG was formed, Plaintiff Sullivan was made an at-will employee of LSDG at the same salary and with the same title he had held at LandQuest.

22. In February 2016, Defendant Corkum orally informed Plaintiff Sullivan of a raise in his annual salary to $300,000 per year. Plaintiff Sullivan's paystubs issued between February 2016 and April 2018 reflected bi-weekly payments totaling salary of $300,000 per year.

23. Upon information and belief, at all times relevant to the claims asserted herein, Plaintiff Sullivan's annual salary was recorded in LSDG's books and records as being $300,000 per year.

24. Plaintiff Vradenburgh was employed by LSDG's predecessor LandQuest and became employed at LSDG when it was formed in 2011. At all times relevant to this action, Ms. Vradenburgh was employed as the Vice President of Human Resources of LSDG pursuant to a written Employment Agreement signed by Defendant Corkum on behalf of LSDG. A true and correct copy of the Vradenburgh Employment Agreement is attached hereto as Exhibit 2.

25. The Vradenburgh Employment Agreement originally set Vradenburgh's annual salary at $150,000.

26. In February 2016, Defendant Corkum orally informed Plaintiff Vradenburgh of a raise in her annual salary to $300,000 per year. Plaintiff Vradenburgh's paystubs issued between February 2016 and April 2018 reflected bi-weekly payments totaling salary of $300,000 per year.

27. In late 2019, due to the financial condition of LSM, LSDG and their related entities, Plaintiff Vradenburgh volunteered to lower her salary to $200,000 per year in exchange for being allowed to work a reduced schedule of thirty (30) hours per week. LSDG agreed to this proposal.

28. In actuality, Ms. Vradenburgh worked far in excess of the agreed thirty (30) hours per week. Nevertheless, upon information and belief, Ms. Vradenburgh's annual salary was recorded in LSDG's books and records as $200,000 per year at the time of her termination.

29. Defendant Corkum negotiated and set the salaries of each of the Plaintiffs. Upon information and belief, Defendant Corkum also determined the bi-weekly payment terms set forth in the Pitts and Vradenburgh Employment Agreements.

30. Upon information and belief, Defendant Corkum is currently in possession of all employee records of the Plaintiffs, including payroll information.

31. Defendant Corkum made decisions regarding the disposition of cash and other assets of LSDG that caused LSDG to be financially unable to pay the wages of Plaintiffs during the relevant time period.

32. Upon information and belief, in or about June 2018, LSM and LSDG performed an audit and investigation of Defendant Corkum's management of LSM's Union Point project in Boston, Massachusetts, and discovered that Defendant Corkum had converted several million dollars of LSM and LSDG funds to his personal use in connection with that project:

(a) Upon information and belief, Corkum caused LSDG to transfer $325,000 to his personal friend Andrew Wells to help Wells purchase a dental practice. The funds used for this transfer were part of a loan intended for LSM's use on the Union Point project.

(b) Upon information and belief, Defendant Corkum arranged for Global Premier Soccer Real Estate Massachusetts, LLC ("GPS"), a partner in a sports complex joint venture with LSM, to make him a personal loan in the amount of $410,050.02 rather than pay GPS's full $500,000 capital contribution to the joint venture with LSM. When the construction lender for the joint venture requested proof that all four partners in the entity had made their capital contributions,

Corkum instructed LSDG to pay GPS $410,050.02, representing to LSDG's accounting department that it was a loan from LSM to GPS to cover the remainder of GPS's required capital contribution to the joint venture. Upon information and belief, Corkum's representation to the accounting department was false, and the $410,050.02 payment from LSDG to GPS was to pay off the personal loan GPS had given to Corkum, and not for the benefit of LSM or its affiliates.

(c) Upon information and belief, in April 2017, a payment of $365,825 was due to K-4, a vendor on the Union Point project. Defendant Corkum advised LSDG's accounting department that the owner of K-4 required the payment to be made through a certain attorney. At Corkum's direction, LSDG's accounting department wired $310,000 to the referenced attorney, and another $55,000 to an account owned by Corkum's spouse. Upon further information and belief, none of the funds wired by LSDG in April 2017 for purpose of paying K-4's outstanding invoice were actually received by K-4, and LSDG was required to make a subsequent payment to K-4 in the amount of approximately $365,825. Upon information and belief, the funds initially wired by LSDG to the attorney and Corkum's spouse were retained by Corkum and used for his personal benefit.

(d) Upon information and belief, on June 16, 2017, Corkum instructed the accounting department at LSDG to wire $252,593.07 to KVC Builders, LLC ("KVC"). Corkum further instructed LSDG accounting personnel to treat the payment "as a loan to me" and represented that he would "repay this by next Friday." Upon further information and belief, the funds wired were used to pay for construction work performed on Corkum's personal residence and were never repaid.

(e) Upon information and belief, in July 2017, Defendant Corkum instructed LSDG to wire $50,000 to Massachusetts attorney John Walker, Esq. as payment for services. Upon further

information and belief, when LSDG's accounting department later contacted Walker for an invoice and tax documents associated with the payment, Walker stated that the funds were not intended as payment for his services, but rather as a pass-through payment on behalf of Corkum.

(f) Upon information and belief, Defendant Corkum caused LSDG to make a short-term personal loan to him in the amount of $750,000, which was used to purchase Corkum a $6.9 million residential property. Upon further information and belief, Corkum failed to repay or cause to be paid on his behalf $100,000 of the loan amount.

(g) Upon and information and belief, an audit of Defendant Corkum's expense reports and company credit card records determined that Corkum had charged and failed to reimburse LSDG and/or LSM for, at least $750,000 in personal charges.

(h) Upon information and belief, Defendant Corkum caused LSM and LSDG to make payments on his behalf for his personal debts totaling more than $3,300,000.

33. Corkum's mismanagement and conversion of funds from LSM and LSDG created a cash shortage that prevented LSDG from covering all of its payroll obligations.

34. On LSDG's regularly scheduled payday of May 25, 2018, LSDG failed to pay the salaries of the Plaintiffs. At the time, Defendant Corkum reassured Plaintiffs that their missed paychecks would be caught up when LSDG next received management fees.

35. In reliance on Defendant Corkum's reassurances, Plaintiffs continued to perform their work on their regular working schedules.

36. LSDG also failed to pay Plaintiffs' salaries on the next regularly scheduled payday of June 8, 2018.

37. Although LSDG briefly resumed regular salary payments on June 22, 2018, it did not make up the missed salary payments from May 25 and June 8, and instead began missing salary payments again on August 31, 2018.

38. LSM, by and through its minority shareholder, Steven Vining, instituted a lawsuit and an arbitration against Defendant Corkum in August 2018 (the "LSM/ Corkum Lawsuit"). Among other things, LSM sought to remove Corkum as an officer, director, and manager of LSM and its affiliates based on the conduct described in Paragraph 32 above.

39. Following the initiation of the LSM/Corkum Lawsuit, LSDG failed to pay the Employee Plaintiffs their regular salaries – or any amount of wages – between August 31, 2018 and March 1, 2019 and again between April 26 and June 7, 2019.

40. Between March 1 and April 12, 2019 and during the period from June 7, 2019 through March 20, 2020, LStar paid the Plaintiffs a portion of their promised salaries.

41. Upon information and belief, LSDG's payroll accountant, Kim Rademacher, was instructed to keep track of the non-payment and underpayment of Plaintiffs' salaries.

42. Plaintiffs received periodic updates regarding the amount of unpaid wages they were owed and were reassured that their salary payments would be caught up once the LSM/ Corkum Lawsuit was resolved and LSDG received sufficient profit participation fees to cover the back wages owed. In reliance on these assurances, the Plaintiffs continued to perform their regular job functions and worked their regular hours throughout the time period during which they were receiving no pay or were being underpaid for their work.

43. Plaintiffs frequently worked more than forty (40) hours in a single workweek. Plaintiffs worked at home in the evenings after devoting eight (8) hours of work time during regular business hours. Plaintiffs also worked on Saturdays, Sundays, and holidays.

44. Plaintiffs did not receive any payment – much less time-and-a-half for overtime – for work weeks during which they worked more than forty (40) hours during the periods from May 25 through June 22, 2018, from August 31, 2018 through March 1, 2019, and from April 26 to June 7, 2019.

45. The Defendants never provided written notice to the Plaintiffs of any change to or reduction of their salaries. Instead, Defendants repeatedly reassured the Plaintiffs that they would "catch up" with the salary payments due.

46. On March 9, 2020, the United States District Court for the Eastern District of North Carolina, Judge Dever presiding, entered an Order appointing a Receiver for LSM.

47. Because LSDG's primary business was the employment of personnel and management of the business of LSM, the appointment of a Receiver for LSM had a significant adverse impact on LSDG's financial condition and further ability to pay its employees.

48. On March 26, 2020, the Employee Plaintiffs were each terminated from their employment at LSDG. True and correct copies of their termination letters and attachments are attached hereto as Exhibit 3.

49. The form letter that LSDG provided to each of the Plaintiffs informing them of their terminations stated:

> **Back-Wages Owed:** Due to the economic circumstances the Company has been forced to work through over the last two years, you are owed a significant amount of back wages (see Exhibit A). This termination does not negate the Company's obligation to pay you what is due for work services rendered.

(Exhibit 3)

50. Plaintiffs' termination letters each had attached an "Exhibit A" confirming the calculation of the back wages each Plaintiff is owed. (Exhibit 3)

51. Upon information and belief, the calculation of back wages owed was generated by LSDG's accounting department from LSDG's electronic payroll records.

52. On the afternoon of March 26, 2020, Defendant Corkum called a meeting of the Board of Directors of LSDG, during which he caused a Board resolution to be passed removing both Steven Vining and Defendant Sullivan as officers of LSDG. Following that Board meeting, Defendant Corkum exercised sole and exclusive management control over LSDG.

53. Following the March 26, 2020 Board meeting, LSDG refused to remit to the Plaintiffs their final paychecks for work performed through March 26, 2020. Under LSDG's regular payroll cycle, Plaintiffs should have received their final paychecks on April 3, 2020.

54. Upon information and belief, Defendant Corkum made the decision to refuse to pay Plaintiffs their final paychecks for work performed through March 26, 2020.

55. Plaintiffs have been damaged as a result of the non-payment and underpayment of their wages as described above.

## COUNT I – VIOLATION OF FAIR LABOR STANDARDS ACT
**(All Plaintiffs Against All Defendants)**

56. Plaintiffs repeat and reallege Paragraphs 1 through 55 above as if fully set forth herein.

57. Defendants willfully failed to pay Plaintiffs at least the required federal minimum wage for all hours worked in violation of 29 U.S.C. § 206.

58. The minimum wage violations described in Paragraph 57 occurred because Defendants did not pay any wages at all to Plaintiffs for work performed May 25 through June 22, 2018, from August 31, 2018 through March 1, 2019, and from April 26 to June 7, 2019.

59. Defendants also willfully failed to pay Plaintiffs time-and-a-half for hours worked in excess of forty (40) hours per week for work performed May 25 through June 22, 2018, from August 31, 2018 through March 1, 2019, and from April 26 to June 7, 2019.

60. Defendants knew or showed reckless disregard as to whether their conduct was prohibited by the FLSA and its accompanying regulations.

61. As a result of Defendants' actions, Plaintiffs have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants, jointly and severally, under 29 U.S.C. § 216(b).

## COUNT II – VIOLATION OF NORTH CAROLINA WAGE & HOUR ACT
**(All Plaintiffs against All Defendants)**

62. The allegations in paragraphs 1 through 61 above are incorporated herein by reference.

63. The provisions of Article 2A of the North Carolina General Statutes, Chapter 95, apply to Plaintiffs' employment with LSDG and Corkum.

64. Plaintiffs' promised annual salaries as described above constitute "wages" within the meaning of N.C. Gen. Stat. § 95-25.2(16).

65. At all relevant times, both LSDG and Corkum were Plaintiffs' "employer" for purposes of N.C. Gen. Stat. § 95-25.6.

66. The acts and omissions of Defendants as set forth above constitute violations of N.C. Gen. Stat. §§ 95-25.3, 95-25.4, 95-25.6 and 95-25.7.

67. Pursuant to N.C. Gen. Stat. § 95-25.22(a), Plaintiffs are entitled to recover, among other things, such wages that are due to them at the time of judgment, with prejudgment interest from the date that they became due.

68. Pursuant to N.C. Gen. Stat. § 95-25.22(a1), Plaintiffs are further entitled to recover liquidated damages equal to the amount of wages due to them.

69. Pursuant to N.C. Gen. Stat. § 95-25.22(d), Plaintiffs are further entitled to recover their costs and reasonable attorneys' fees in this action.

## COUNT III – BREACH OF CONTRACT
**(Plaintiffs Pitts and Vradenburgh against Defendant LSDG)**

70. Plaintiffs repeat and reallege Paragraphs 1 through 69 above as if fully set forth herein.

71. The Employment Agreements between Defendant LSDG and Plaintiffs Pitts and Vradenburgh were valid contracts that were binding on LSDG.

72. Plaintiffs Pitts and Vradenburgh have fulfilled all requirements of their Employment Agreements and complied fully with all terms and conditions of their Employment Agreements.

73. The plain terms of the Employment Agreements required LSDG to pay Pitts an annual salary of not less than $300,000 on a bi-weekly basis, and required LSDG to pay Vradenburgh an annual salary of not less than $150,000 on a bi-weekly basis.

74. LSDG has breached the payment terms of the Employment Agreements by failing to pay bi-weekly installments of Plaintiffs' Pitts' and Vradenburgh's annual salary when due.

75. Plaintiffs Pitts and Vradenburgh have suffered damages as a direct and proximate result of LSDG's breaches of the salary payment terms of the Employment Agreements in an amount to be proven at trial.

## COUNT IV – *QUANTUM MERUIT*
**(Plaintiff Sullivan against Defendant LSDG)**

76. Plaintiffs repeat and reallege Paragraphs 1 through 75 above as if fully set forth herein.

77. Plaintiff Sullivan rendered services to Defendant LSDG with the expectation of receiving his regular salary payment during the periods of May 25 through June 22, 2018 and from August 31, 2018 through March 26, 2020.

78. Defendant LSDG voluntarily accepted Plaintiff Sullivan's services with knowledge of his expectation of being paid his regular salary.

79. Plaintiff Sullivan did not perform his services gratuitously.

80. Plaintiff Sullivan did not receive payment of his regular salary as expected.

81. Plaintiff Sullivan seeks restitution and a constructive trust imposed on the bank accounts and tangible property of LSDG in the amount of $282,500.02 for his unpaid salary.

## COUNT V – ABUSE OF PROCESS
**(All Plaintiffs against Defendants Corkum and LSDG)**

82. Plaintiffs repeat and reallege Paragraphs 1 through 80 above as if fully set forth herein.

83. On April 17, 2020, Plaintiffs' counsel sent a letter to counsel for LSDG demanding payment of Plaintiffs' unpaid wages and requesting pre-litigation mediation pursuant to the Pitts and Vradenburgh Employment Agreements.

84. LSDG's counsel did not respond substantively to the letter demanding payment of unpaid wages. Instead, on May 1, 2020, Corkum, acting on behalf of LSDG, caused a retaliatory, frivolous, and malicious lawsuit to be filed against the Plaintiffs styled *LStar Development Group,*

*Inc. v. Steven J. Vining, William Hampton Pitts, Patrick "Pete" Sullivan, Rachel E. Vradenburgh and Oak City Development, LLC*, No. 5:20-cv-00184-FL (E.D.N.C.) (the "LSDG Lawsuit").

85. Upon information and belief, the LSDG lawsuit was filed for the improper purposes of: (1) laying claim to and asserting control over intangible intellectual property belonging to LSM, in an attempt to circumvent the Court's Order dated March 9, 2020 appointing a Receiver for LSM; and (2) further delaying payment of Plaintiffs' wages and increasing the costs to the Plaintiffs associated with recovering their unpaid wages.

86. Plaintiffs have suffered damages in the form of lost time-value of money and expenditures of attorneys' fees and costs as a direct and proximate result of LSDG's frivolous and malicious lawsuit.

87. LSDG and Corkum acted with malice and specific intent to harm Plaintiffs when they caused their frivolous lawsuit to be filed.

88. LSDG's and Corkum's malice in filing their frivolous lawsuit makes Plaintiffs eligible to receive an award of Punitive Damages pursuant to N.C. Gen. Stat. § 1D-1 *et seq*.

WHEREFORE, Plaintiffs William Hampton Pitts, Patrick "Pete" Sullivan and Rachel Vradenburgh pray that the Court enter judgment in their favor and against Defendants LStar Development Group, LLC and Kyle Corkum, and award Plaintiffs the following relief:

(a) A jury trial on all issues triable to a jury;

(b) That they recover from Defendants all wages, benefits, and compensation to which they are entitled pursuant to 29 U.S.C. § 216(b) and N.C. Gen. Stat. § 95-25.22(a);

(c) That they recover from Defendants compensatory, out-of-pocket, incidental, and consequential damages plus interest as allowed by law in an amount to be determined at trial;

(d) That they recover from Defendants liquidated damages pursuant to 29 U.S.C. § 216(b) and N.C. Gen. Stat. § 95-22(a1) in an amount to be determined at trial;

(e) That Plaintiff Sullivan recover restitution in the amount of $282,500.02 or, in the alternative, that the Court impose a constructive trust on the assets of LSDG for the benefit of Plaintiff Sullivan in the amount of $282,500.02;

(f) That Plaintiffs recover from Defendants punitive damages pursuant to N.C. Gen. Stat. § 1D-1 *et seq.* for Defendants' malicious, willful and wanton conduct;

(g) That Plaintiffs recover from Defendants their attorneys' fees and costs of suit to bring this action pursuant to 29 U.S.C. § 216(b) and N.C. Gen. Stat. § 95-25.22(d);

(h) That Plaintiffs recover from Defendants pre-judgment and post-judgment interest accrued from the date(s) each payment of unpaid wages was originally due pursuant to N.C. Gen. Stat. § 95-25.22(a); and

(i) That the Court award Plaintiffs such other and further relief as the Court deems appropriate.

Respectfully submitted this 5th day of October 2020.

                **THE NOBLE LAW FIRM, PLLC**

                *Kathryn F. Abernethy*
                Kathryn F. Abernethy, Esq. (N.C. Bar No. 43933)
                The Noble Law Firm, PLLC
                141 Providence Rd., Ste. 210
                Chapel Hill, NC 27514
                Office: (919) 251-6008
                Fax: (919) 869-2079
                Email: kabernethy@thenoblelaw.com
                *Attorneys for the Plaintiffs*