IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-525-FL

| | |
|---|---|
| WILLIAM HAMPTON PITTS, PATRICK SULLIVAN, and RACHEL VRADENBURGH, <br><br> Plaintiffs, <br><br> v. <br><br> LSTAR DEVELOPMENT GROUP, INC. and KYLE V. CORKUM, <br><br> Defendants. | ORDER |

This matter is before the court upon defendants' partial motion to dismiss (DE 13), pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  The issues raised have been briefed fully, and in this posture are ripe for ruling.  For the following reasons, defendants' motion is denied.

### STATEMENT OF THE CASE

Plaintiffs commenced this action October 5, 2020, and filed the operative amended complaint October 21, 2020, asserting claims under the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA") against their alleged former employers, defendant LStar Development Group, Inc. ("LStar Development"), and its majority shareholder, president, and director, defendant Kyle Corkum ("Corkum").  Plaintiffs William Hampton Pitts ("Pitts") and Rachel Vradenburgh ("Vradenburgh") also assert breach of contract claims against

---

[1] Also pending are plaintiffs' partial motion for summary judgment (DE 21), plaintiffs' motion to seal (DE 27), defendants' motion to deny or defer consideration of plaintiffs' motion for partial summary judgment (DE 33), plaintiffs' motion to strike (DE 43), and plaintiffs' motion to amend their statement of facts (DE 48), which will be addressed by separate order.

defendant LStar Development, and plaintiff Patrick Sullivan ("Sullivan") asserts a claim for quantum meruit against defendant LStar Development. Plaintiffs request equitable tolling of the applicable statute of limitations from May 1, 2020, until August 27, 2020, and seek damages for unpaid wages; overtime compensation; liquidated and statutory damages; as well as fees, costs, and interest.

Defendants filed the instant partial motion to dismiss on December 4, 2020, arguing that they are exempt from the minimum wage and overtime provisions of the NCWHA; the FLSA preempts the breach of contract and quantum meruit claims; and plaintiffs' claims for damages accruing prior to October 5, 2018, are time-barred. Plaintiffs responded in opposition January 8, 2021.

## STATEMENT OF FACTS

The facts alleged in plaintiffs' amended complaint may be summarized as follows. Defendant LStar Development formed in 2011 as a vehicle to conduct business operations, employ personnel, and provide management services for LStar Management, LLC ("LStar Management"), a real estate management and development company. (Am. Compl. ¶¶ 4-5). Defendant Corkum is the majority shareholder of LStar Management and defendant LStar Development, and he also serves as president and director of defendant LStar Development. (Id. ¶ 6). Until March 26, 2020, defendants allegedly employed plaintiffs as follows: plaintiff Pitts served as chief operating officer, plaintiff Vradenburgh served as vice president of human resources, and plaintiff Sullivan served as an at-will employee. (Id. ¶¶ 17, 21, 24, 48).

During plaintiffs' employment, defendant Corkum allegedly mismanaged defendant LStar Development's and LStar Management's funds, causing a cash shortage that prevented defendant LStar Development from discharging its payroll obligations. (Id. ¶ 33). In particular, defendant

2

Corkum allegedly transferred $325,000.00 of LStar Development's funds to his personal friend Andrew Wells ("Wells"), so that Wells could purchase a dental practice, instead of applying the funds towards their intended purpose, LStar Management's Union Point project. (Id. ¶ 32). Moreover, in April 2017, defendant Corkum allegedly told defendant LStar Development's accounting department that a Union Point project vendor required a payment to be made through a certain attorney. (Id.). Based on this instruction, LStar Development wired $310,000.00 to the attorney and $55,000.00 to a bank account owned by defendant Corkum's spouse. (Id.). Plaintiffs allege that defendant Corkum used those funds for his personal benefit, and defendant LStar Development was required to make a subsequent payment to the vender for $365,825.00. (Id.).

Plaintiffs also allege that defendant Corkum arranged for Global Premier Soccer Real Estate Massachusetts, LLC ("Global Premier") to loan him $410,050.02, instead of making a $500,000.00 capital contribution to its joint venture with LStar Management. (Id.). When the joint venture's creditor required proof of Global Premier's capital contribution, defendant Corkum allegedly instructed defendant LStar Development to pay Global Premier $410,050.02. (Id.). Although defendant Corkum told LStar Development's accounting department that the payment was a loan for the joint venture, plaintiffs allege that it was used to pay off the personal loan that Global Premier made to defendant Corkum. (Id.).

On June 16, 2017, defendant Corkum allegedly instructed the accounting department at defendant LStar Development to wire $252,593.07 to KVC Builders, LLC and to treat the payment as loan to himself, which he would repay "by next Friday." (Id.). According to plaintiffs, the funds were used to pay for construction work on defendant Corkum's personal residence, and he never repaid defendant LStar Development. (Id.). Later, in July 2017, defendant Corkum allegedly instructed defendant LStar Development to wire $50,000.00 to John Walker ("Walker"),

3

an attorney, as payment for services. (Id.). When defendant LStar Development's accounting department subsequently contacted Walker for an invoice and tax document, Walker allegedly indicated that the funds were not payment for services, but rather a pass-through payment on behalf of defendant Corkum. (Id.). Finally, defendant Corkum caused defendant LStar Development to loan him $750,000.00, so that he could purchase a $6,900,000.00 residential property. (Id.). Defendant Corkum allegedly fail to repay $100,000.00 of the loan amount. (Id.).

Overall, defendant Corkum's expense reports and company credit card records allegedly reveal that defendant Corkum failed to reimburse defendant LStar Development "and/or" LStar Management for at least $750,000.00 in personal charges. (Id.). In addition, defendant Corkum allegedly caused defendant LStar Development and LStar Management to pay more than $3,300,000.00 for his personal debts. (Id.). As a result, defendant LStar Development experienced a cash shortage and failed to pay plaintiffs' salaries on the regular scheduled payday of May 25, 2018. (Id. ¶¶ 33-34). Defendant Corkum allegedly reassured plaintiffs that they would be paid once defendant LStar Develop received management fees. (Id. ¶ 34). However, on the next regularly scheduled payday of June 8, 2018, defendant LStar Development allegedly failed to pay plaintiffs again. (Id. ¶ 36). Defendant LStar Development briefly resumed regular salary payments on June 22, 2018, but began missing salary payments again on August 31, 2018, and allegedly failed to make up the missed salary payments from May 25 and June 8, 2018. (Id. ¶ 37).

In August 2018, LStar Management, through its minority shareholder Steven Vining ("Vining"), instituted a lawsuit against defendant Corkum, seeking to remove him as an officer, director, and manager of LStar Management and its affiliate companies, due to his alleged financial mismanagement. (Id. ¶ 38). Because of the lawsuit, defendant LStar Development allegedly failed to pay the plaintiffs any wages from August 31, 2018, until March 1, 2019, and again between

April 26, 2019, and June 7, 2019. (Id. ¶ 39). Defendant LStar Development paid plaintiffs a portion of their salaries during the periods of March 1, 2019, through April 12, 2019, and June 7, 2019, through March 20, 2020. (Id. ¶ 40). Plaintiffs were reassured that they would receive their salary payments once the lawsuit terminated and defendant LStar Development received sufficient profit participation fees. (Id. ¶ 42).

On March 9, 2020, the United States District Court for the Eastern District of North Carolina appointed a receiver for LStar Management, which had a significant adverse impact on LStar Development's financial condition and ability to pay its employees. (Id. ¶¶ 46-47). Plaintiffs were terminated from their employment at defendant LStar Development on March 26, 2020. (Id. ¶ 48). In their termination letters, defendant LStar Development stated: "Due to the economic circumstances the company has been forced to work through over the last two years, you are owed a significant amount of back wages . . . This termination does not negate the Company's obligation to pay what is due for work services rendered." (Id. ¶ 49).

At a March 26, 2020, meeting of defendant LStar Development's board of directors, defendant Corkum allegedly caused a board resolution to be passed that removed Vining and plaintiff Sullivan from their positions as officers of defendant LStar Development. (Id. ¶ 52). Following the board meeting, defendant Corkum exercised sole and exclusive management control of defendant LStar Development, and allegedly refused to pay plaintiffs' salaries for work performed through March 26, 2020. (Id. ¶¶ 52-54).

Additional facts pertinent to the instant motion will be discussed in the court's analysis.

## COURT'S DISCUSSION

A. Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.   Analysis

   1.   NCWHA Exemptions

Defendants seek dismissal of plaintiffs' NCWHA claims, on grounds that defendant LStar Development is exempted from the NCWHA.

The NCWHA sets forth certain "exemptions" to claims in the context of plaintiffs subject to the FLSA, as follows:

> The provisions of [§] 95-25.3 (Minimum Wage) [and §] 95-25.4 (Overtime) . . . do not apply to: (1) Any person employed in an enterprise engaged in commerce or in the production of goods for commerce as defined in the [FLSA] . . . .

N.C. Gen. Stat. § 95-25.14(a).

Here, plaintiffs allege that defendant LStar Development is engaged in commerce within the meaning of the FLSA. (See Am. Compl. ¶ 12). Taking plaintiffs' allegation as true, the exemption set forth in North Carolina General Statute § 95-25.14(a) applies to plaintiffs' NCWHA claims for minimum wage and overtime. Nevertheless, plaintiffs argue that they assert their

6

NCWHA claims for minimum wage and overtime, in the alternative to their FLSA claims, in the event that their employment is not covered by the FLSA. Pleading claims in the alternative is proper at this stage of the case. See Fed. R. Civ. P. 8(d)(2); see also Blount v. Carlson Hotels, Inc., No. 3:11-CV-452-MOC-DSC, 2012 WL 1021735, at *5 (W.D.N.C. Mar. 1, 2012) (rejecting argument that plaintiff's NCWHA overtime claim must be dismissed because plaintiff "is permitted at this early stage of the proceedings to plead her NCWHA claims in the alternative to her FLSA claims"). Accordingly, defendants' motion to dismiss is denied in this part.

Regardless of whether plaintiffs' employment is covered by the FLSA, the NCWHA does not exempt plaintiffs' "pay day" claims, asserted under North Carolina General Statute §§ 95-25.6 and 95-25.7, to the extent those claims are separate and distinct from plaintiffs' FLSA minimum wage and overtime claims. See N.C. Gen. Stat. § 95-25.14(a); see also Lima v. MH & WH, LLC, No. 5:14-CV-896-FL, 2019 WL 2602142, at *16 (E.D.N.C. Mar. 8, 2019). Accordingly, defendants' motion to dismiss must be denied in this part with respect to plaintiffs' pay day claims.

2. FLSA Preemption

Defendants seek to dismiss plaintiffs Pitts's and Vradenburgh's breach of contract claims and plaintiff Sullivan's quantum meruit claim, on grounds that they are precluded under a theory of obstacle preemption.[2] Defendants rely exclusively upon Anderson v. Sara Lee Corp., 508 F.3d 181 (4th Cir. 2007).

In Anderson, plaintiffs sought to enforce their rights under the FLSA by bringing state common law claims for breach of contract, negligence, and fraud against their employer, but they did not assert any claims under the FLSA or the NCWHA. 508 F.3d at 183-84. In considering

---

[2] Defendants do not argue that the FLSA preempts plaintiffs' NCWHA claims.

whether the FLSA preempted the plaintiffs' state law claims, the United States Court of Appeals for the Fourth Circuit first observed that "[w]ithout doubt, [plaintiffs'] state claims essentially require the same proof as claims asserted under the FLSA itself." Id. at 194. Then, because "Congress prescribed exclusive remedies in the FLSA for violations of its mandates", the Fourth Circuit concluded that plaintiffs' "FLSA-based contract, negligence, and fraud claims are precluded under a theory of obstacle preemption." Id. at 193-94. The Fourth Circuit further explained that "its conclusion [wa]s consistent with the rulings of several district courts deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims." Id. at 194 (citations omitted).

Following the Fourth Circuit's decision in Anderson, several courts within this circuit, including this one previously, have concluded that the FLSA does not preempt state law claims directed at wages that are not covered by the FLSA, such as compensation for work below forty hours per week and at a rate above federal minimum wage. See, e.g., Martinez-Hernandez v. Butterball, LLC, 578 F. Supp. 2d 816, 820 (E.D.N.C. 2008) ("The first and third claims set forth above are separate and distinct from plaintiffs' FLSA claims. They invoke neither the minimum wage nor the overtime provisions of the FLSA. As such, they are not preempted by the FLSA."); Epps v. Scaffolding Sols., LLC, No. 2:17-CV-562, 2019 WL 11254781, at *2 (E.D. Va. Jan. 4, 2019) ("[T]he FLSA does not preempt any and all state law wage claims. Instead, claims for unpaid work below forty hours per week and at a rate above minimum wage are left for state contract law. Therefore, contract claims remain cognizable under state law if they are based on employment contracts with terms that are more generous than the guarantees in the FLSA." (internal quotations and citations omitted) (emphasis in original)); Hanson-Kelly v. Weight Watchers Int'l, Inc., No. 1:10CV65, 2011 WL 2689352, at *5 (M.D.N.C. July 11, 2011) ("[U]nlike

in Anderson, Plaintiffs here are not seeking overtime pay or asserting that they received less than the federal minimum wage in their Second Claim, alleging unpaid wages under Section 95–25.6 of the NCWHA; rather, they are seeking unpaid wages for time they actually worked. Thus, Plaintiffs' NCWHA unpaid wage claim is not preempted by the FLSA."). This conclusion is consistent with Anderson because, in seeking to recover unpaid wages for work below forty hours per week and at a rate above federal minimum wage, a plaintiff would not be seeking a state law remedy for an FLSA violation, but rather a state law remedy for a state law violation.

Here, plaintiffs Pitts and Vradenburgh assert breach of contract claims based on defendants' alleged failure to pay their respective salaries of $300,000.00 and $150,000.00, as required by their employment contracts. (Am. Compl. ¶¶ 73-74). Likewise, plaintiff Sullivan asserts a quantum meruit claim, based on defendants' alleged failure to pay his salary of $300,000.00, under an alleged implied in law contract. (Id. ¶¶ 22, 76-81). Plaintiffs' salaries exceeded the federal minimum wage, and therefore, plaintiffs are not seeking to enforce their rights under the FLSA through state law claims. Accordingly, the FLSA does not preempt plaintiffs Pitts's and Vradenburgh's breach of contract claims and plaintiff Sullivan's quantum meruit claim, and defendants' motion to dismiss is denied in this part.

Defendants also argue that the FLSA preempts plaintiffs' fifth "claim", which is a request that the court equitably toll the statute of limitations on from May 1, 2020, to August 27, 2020. (Am. Compl. ¶ 91). Although this portion of the complaint contains no reference to state law, defendants argue that plaintiffs are seeking to use state law to override the statute of limitations under the FLSA. (Mem. (DE 14) at 7). However, as explained in plaintiffs' response, plaintiffs are seeking equitable tolling under federal law. (Mem. (DE 20) at 12-13). Accordingly, that part of defendants' motion, seeking to dismiss this request on the basis of FLSA preemption, is denied.

See generally Anderson, 508 F.3d at 191 ("Federal law may preempt state law under the Supremacy Clause . . .") (emphasis added) (citations omitted)).

3. Quantum Meruit

Defendants seek to dismiss plaintiff Sullivan's quantum meruit claim, on grounds that an express contract precludes recovery for quantum meruit.

Quantum meruit, also known as unjust enrichment, "operates as an equitable remedy based upon a quasi[-]contract or a contract implied in law which provides a measure of recovery for the reasonable value of services rendered." Ron Medlin Const. v. Harris, 364 N.C. 577, 580 (2010) (internal quotations omitted) (quoting Whitfield v. Gilchrist, 348 N.C. 39, 42 (1998); Potter v. Homestead Pres. Ass'n, 330 N.C. 569, 578 (1992)). If "there is a contract between the parties the contract governs the claim and the law will not imply a contract." Booe v. Shadrick, 322 N.C. 567, 570 (1988). Thus, the existence of an express contract precludes recovery for unjust enrichment and in quantum meruit. Gilchrist, 348 N.C. at 42 ("Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment."); Booe, 322 N.C. at 570.

Here, plaintiff Sullivan allegedly worked for LandQuest, LLC, a corporate predecessor of defendant LStar Development, until defendant LStar Development's formation, at which time "Plaintiff Sullivan was made an at-will employee of [defendant LStar Development] at the same salary and with the same title he had held at LandQuest." (Am. Compl. ¶ 21). Then, in February 2016, defendant "Corkum orally informed Plaintiff Sullivan of a raise in his annual salary to $300,000 per year." (Id. ¶ 22). Plaintiff Sullivan's paystubs issued between February 2016 and April 2018 reflected bi-weekly payments consistent with an annual salary of $300,000.00, and defendant LStar Development's books and records reflected the same. (Id. ¶¶ 22-23).

10

Although a close question, the court cannot conclude, on these allegations alone, that an express contract was formed—that is, that a definite "offer [was] communicated, [was] complete, and [was] accepted in its exact terms." Yeager v. Dobbins, 252 N.C. 824, 828 (1960). Defendants may raise this argument again at a later stage of this case, after further development of the record. However, at this preliminary stage, the court will not assume the existence of an express contract. Accordingly, defendants' motion to dismiss is denied in this part.

4. Statute of Limitations

Defendants move to dismiss plaintiffs' NCWHA and FLSA claims for damages accruing prior to October 5, 2018, on grounds that they are barred by the statute of limitations.

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, see Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). "[A] motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein." Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011). Dismissal under Rule 12(b)(6) based on affirmative defenses "is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Id.; Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir. 1996).

With respect to plaintiffs' FLSA claims, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). Plaintiffs allege that defendants' FLSA violations were willful, (Am. Compl. ¶¶ 57-61), and they commenced this action on October 5, 2020. Accordingly, the amended complaint does not clearly reveal a meritorious statute of limitations

defense to all alleged damages accruing before October 5, 2018.³  Defendants' motion to dismiss is denied in this part.

The statute of limitations for plaintiffs' claims under the NCWHA is two years. See N.C. Gen. Stat. § 95–25.22(f).  In support of equitable tolling, plaintiffs allege that they were delayed in asserting their claims because defendants "refused to engage in pre-litigation mediation for several months." (Am. Compl. ¶ 90).  Viewing the facts in light most favorable to plaintiffs, the amended complaint does not clearly reveal a meritorious statute of limitations defense.  See Cruz v. Maypa, 773 F.3d 138, 146-47 (4th Cir. 2014) (reversing in part the district court's decision to grant the defendant's motion to dismiss because the plaintiff's claims were time-barred and remanding for discovery so the district court could determine if any or all of plaintiff's claims were equitably tolled).  Accordingly, defendants' motion to dismiss is denied in this part.

## CONCLUSION

Based on the foregoing, defendants' partial motion to dismiss (DE 13) is DENIED.

SO ORDERED, this the 16th day of September, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge

---

³  Defendants do not address the plausibility of plaintiffs' allegations on willfulness in briefing.

12

Case 5:20-cv-00525-FL   Document 52   Filed 09/16/21   Page 12 of 12